**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ASHLEY LINTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **CASE NO. 3:13-cv-01383** |
| **vs.** | ) | **JUDGE HAYNES/KNOWLES** |
| | ) | |
| | ) | **JURY DEMAND** |
| | ) | |
| **DOLLAR GENERAL CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

### I.  Introduction and Background

This matter is before the Court upon Plaintiff's "Motion for Partial Summary Judgment on Violation of 29 U.S.C. § 2615(a)(1) and the FMLA" (Docket No. 36) and Defendant's "Motion for Summary Judgment" (Docket No. 50).  Plaintiff has filed a supporting Memorandum of Law (Docket No. 37) and eighteen Exhibit attachments (Docket Nos. 37-1 to 37-18).  Plaintiff has also filed her own Affidavit as an Exhibit to her supporting Memorandum.[1]  Plaintiff's Aff., Docket No. 37-15.  Plaintiff's Affidavit refers to virtually all of the Exhibits to her supporting Memorandum, as "true and accurate copies of what they claim to be...."  Plaintiff's Aff., Docket No. 37-15, p.4.

Defendant has filed a Response in Opposition to the Motion (Docket No. 47), with

---

[1] Defendant subsequently filed a Motion to Strike Plaintiff's Affidavit (Docket No. 49), which was denied by Judge Haynes (Docket No. 73).

excerpts from Plaintiff's Deposition (Docket No. 47-1).[2]

Defendant has also filed a Motion for Summary Judgment (Docket No. 50), a supporting Memorandum of Law (Docket No. 51), a Statement of Undisputed Facts (Docket No. 52), and the Declaration of Terrie Lane (Docket No. 53). Plaintiff has filed a Response in Opposition to the Motion (Docket No. 62), with a number of Exhibits. Defendant has filed a Reply to Plaintiff's Response. Docket No. 67.

Plaintiff, a former employee of Defendant, was terminated on January 7, 2013. As will be discussed in greater detail below, Plaintiff's Motion is based upon a theory that Defendant interfered with her attempt to invoke FMLA protected rights because she missed a meeting with her supervisor and others that was scheduled for January 4, 2013. Plaintiff contends that she had been certified for leave pursuant to the FMLA, that she had applied for Family Medical Leave, and that a flare-up of the certified serious medical condition prohibited her from attending the meeting. Plaintiff further avers that she was terminated "specifically for the absence of January 4th, 2013." Docket No. 37, p.2. Plaintiff argues that, for purposes of her instant Motion, the Court need not "delve into the Plaintiff's extensive complaints of harassment and discrimination dating back to 2011."

Defendant argues that this case is not about Plaintiff's actions on a single day, but rather, on the cumulative effect of her repeated violations of the call in procedures contained in the employee handbook. Docket No. 47, p. 1.

---

[2] Plaintiff subsequently filed a Motion to exclude her own Deposition transcript (Docket No. 42), which Judge Haynes denied (Docket No. 79).

## II.  Undisputed Facts[3]

Defendant hired Plaintiff on March 25, 2011, as a Tax Clerk.  Plaintiff's Dep., Docket No. 84-2, p.102.  Plaintiff was an employee of Defendant until she was terminated on January 7, 2013.  Docket No. 53, p. 4-5.  Plaintiff contends that her termination violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, et seq., the 1990 Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., the Tennessee Disability Act, T.C.A. § 8-50-103, and the Tennessee Human Rights Act, T.C.A. § 4-21-101, et seq.[4]  Docket No. 1.

At the time of her hiring, Plaintiff was dyslexic.  Docket No. 84-1, p. 46.  She also had some "stomach issues," but she had no medical restrictions.  *Id.*, p. 47-48.  Her supervisors, Tom Bullard and Jarod Mullins, were aware of her dyslexia.  *Id.*  Her direct supervisors, while she was an employee of Defendant, were Mr. Tom Bullard, Mr. Jarod Mullins, Ms. Valerie James, and Ms. Jessye Mullen.  *Id.*, p. 77-78.

Defendant had an attendance policy and an FMLA policy.  Lane Decl., Docket No. 53, p.1-2.  The "Attendance and Tardiness Policy" from the February 22, 2012, version of the Employee Handbook states in relevant part:

> Excessive absenteeism and tardiness have a negative effect on our productivity and quality of service.  For this reason, Dollar General expects its employees to be present for work when scheduled and to call their manager if for any reason they cannot be at work at the scheduled time.

---

[3] The following facts are in a form required by Fed. R. Civ. P. 56, and, unless otherwise indicated, are undisputed.

[4] Plaintiff's instant Motion seeks summary judgment only on her claims under the FMLA.  Defendant's Motion for Summary Judgment states that it seeks a judgment on all of Plaintiff's claims.  Defendant, however, does not address Plaintiff's claims under the Tennessee Human Rights Act.  Defendant, therefore, is not entitled to summary judgment on this claim.

Employees are expected and required to report to their designated work locations at the time their work activity is to begin. *In the event an employee cannot report to work as scheduled, the employee must notify his or her manager at least one hour prior to the scheduled reporting time or be prepared to provide evidence of extenuating circumstances.*

. . .

Employees are responsible for communicating with their managers on a regular basis. In all cases of an employee's absence or tardiness, the employee should provide his or her manager with a reason for the absence and if applicable, the probable duration of the absence. This will enable the workload to be redistributed if necessary. If the absence is related to a medical reason, the Company reserves the right to request medical documentation regarding the absence.

*Excessive absenteeism, unless for an approved leave of absence, will be evaluated on a case by case basis to determine the need for counseling.* An employee who is absent without notice or authorization from his or her manager for three (3) or more consecutive scheduled work days may be considered to have voluntarily resigned from his or her job.

Missed work includes tardiness, partial day absences, unexcused absences or failure to report to work as required. *All employees who have established a pattern of excessive tardiness and/or absenteeism may be subject to disciplinary action up to and including termination.*

**Note**:

*Qualified absences related to FMLA or other approved absences taken in accordance with Company policy or pursuant to applicable law for eligible employees will not lead to performance counseling.*

Docket No. 53-1, p.1 (boldface and italics in original).

Defendant's FMLA policy provides in relevant part:

Where practicable, eligibility for leave should be determined prior to the date the leave is to commence. After notifying his or her

manager of the need for leave, the employee should immediately contact Matrix at 1-888-644-3550 to initiate an FMLA leave request. An employee on FMLA leave is required to report periodically to Matrix on his or her status and intent to return to work. If the leave is for the employee's own serious health condition, a release to return to work (Fitness for Duty) will be required prior to returning to work. Upon return from FMLA leave, the Company will return the employee to his/her original position or a substantially equivalent position.

**Note:**

*It is a violation of Company policy to deny or discourage an employee from exercising his or her rights or to retaliate against an employee who has exercised his or her rights under FMLA or this policy.*

. . .

An employee must provide the Company with 30 days advance notice before FMLA leave is to begin if need for leave is foreseeable: for example, if need for leave is based on an expected birth, placement for adoption or foster care, or planned medical treatment for your own or a family member's serious health condition. *However, if 30 days advance notice is not practical or possible (e.g., an emergency), the employee must give notice as soon as practicable.*

. . .

*The employee must provide notification to his or her manager as soon as the need for leave is known and provide the expected dates that the employee will not be at work.*

. . .

Employees taking FMLA leave to care for a parent, child, or spouse with a serious health condition or for the employee's own serious health condition will be required to provide medical certification in support of his or her request. Matrix will send the medical certification form to the employee upon initiation of the leave claim for completion by his or her health care provider. *The employee must return the form within the timeframe required (i.e., 15 days from the date Matrix is notified).*

*Id.,* p. 2-5 (boldface original; emphasis added).

According to Defendant, Plaintiff was "repeatedly warned to adhere to" its Attendance and Tardiness Policy. Docket No. 47, p.3. The record shows that Plaintiff had a number of violations of Defendant's Attendance and Tardiness Policy. On September 12, 2011, Plaintiff received a "Documented Verbal Counseling," which stated in relevant part:

> Your attendance and punctuality is at an unacceptable level. Since April 11, 2011, you have had a total of 77 attendance occurrences. You were tardy 76 days and missed 1 days [*sic*] due to unplanned absences (see documentation).

Plaintiff's Dep., Ex. 9, Docket No. 84-3, p. 29.

Plaintiff signed a Conduct/Policy Violation form on October 6, 2011, acknowledging:

> I understand the information and requirements written in this document. Repetition of this Conduct/Policy Violation or further violations will result in further corrective action, up to and including termination.

*Id.,* p. 30.

Plaintiff took her first FMLA leave in approximately February-March 2012. Docket No. 84-1, p. 125. She took two weeks and then three half days before her full return to work. *Id.* This leave was for bipolar disorder, ADHD, and anxiety. *Id.*

She received another Documented Verbal Counseling in October 2011 due to a "lack of punctuality" and unexcused absenteeism. Docket No. 84-3, p. 29-42.

On February 8, 2012, Plaintiff received a Written Counseling for Conduct. Plaintiff's Dep. Ex.11, Docket No. 84-3, p. 44-46. The Conduct/Policy Violation form stated in relevant part:

> Your attendance and tardiness continue to be at an unacceptable level. Since October 6, 2011, you have a total of 26 attendance occurrences. You were tardy 15 days and missed 11 days due to

> unplanned absences.
>
> . . .
>
> You are required to notify Valerie James at least one hour prior to your scheduled reporting time if you cannot report to work as scheduled.

*Id.*, p. 44-45.

Plaintiff was again warned that further violations would result in further corrective action, up to and including termination. *Id.,* p. 45. Plaintiff hand wrote the following in a section headed "Employee Comments":

> I'm trying the best to my ability to work a 40 hour week, health issues makeit [*sic*] complicated. I will look into solutions of problem.

*Id.*, p. 45.

On March 30, 2012, Plaintiff received a "S.M.A.R.T." coaching. Docket No. 84-3, p. 48. That document stated in part, "Dailey time keeping will no longer occur, but Ashley will keep her tax admin. aware of her absences." *Id.* On the back of that form, Plaintiff hand wrote, "I feel I am being treated different with my time, due to FMLA." *Id.*, p. 49.

On April 30, 2012, Plaintiff received another "Conduct/Policy Violation Form." *Id.*, p. 50. The form states "Written Counseling," but also states, "Date of Discussion: April 30, 2012." *Id.* That form states in relevant part:

> On February 8, 2012, you received a Written Counseling for several issues with two issues being unacceptable attendance and tardiness. As of April 30, 2012, this Written Counseling will replace the February 8, 2012 Written Counseling. This Written Counseling will not address between October 1, 2011 and February 8, 2012, any attendance occurrences that were unplanned absences.

On October 6, 2011, you received a documented verbal counseling for unacceptable attendance and tardiness dating back to April 11, 2011. The documented verbal included 77 attendance occurrences, with 76 of those occurrences being where you were tardy.

On multiple dates you failed to notify management in a timely manner regarding your inability to arrive on time.

Between February 13, 2012 and April 18, 2012 you have been tardy an additional 9 days.

Your tardiness continues to be at an unacceptable level. Since April 11, 2011, you have been tardy 85 days.

Ashley is expected to notify her immediate supervisor (Jarrod Mullins) at least one hour prior to her scheduled reporting time if she is unable to report to work as scheduled.

Docket No. 84-3, p. 50.

In the Employee Comments section of the form, Plaintiff hand wrote: "Doctor certified FMLA going to June 1, 2011. I did not apply for FMLA cause I was told my supervisor [*sic*] that I didn't qualify. I do not feel the 77 tardies are correct." *Id.*, p. 52.

Plaintiff's handwritten notes, which were produced at her deposition, contain the following in an item dated August 2012:

[Jarod stated] I am unable to tell you that it is ok if you are out of the office when you are sick. I wish that I could, but given the situation, I can't. If you want to move up in this company you have to come to work. If you are having a bad [*sic*], just tell me and I will give you some space. I believe that if you come to work and work a forty hour week that you will find that things will get better for you.

Docket No. 84-2, p. 80; 84-4, p. 3.

Plaintiff's notes also state that Jarod said, on September 7, 2012:

I have never seen anyone who goes to the dentist as much as you. I

have never seen anyone who is not at work as much as you.

*Id.*

On October 12, 2012, Plaintiff was issued another "S.M.A.R.T." coaching document.

Docket No. 84-3, p. 53.  That document states in part as follows:

> On April 30, 2012, Ashley was placed on a Written Warning for
> excessive attendance occurrences.  Between April 30, 2012 and
> October 12, 2012, we currently have record of an additional 30
> attendance occurrences and 2 occurrences of inaccurate reporting
> on her timecard.  Ashley's time and attendance continues to be
> excessive and unacceptable.  Additional occurrences will result in a
> Final Written Warning being issued.  It should be noted any
> occurrences related to FMLA are not documented on the
> spreadsheet; however, occurrences currently identified as FMLA
> that are ultimately not certified to be FMLA will be counted as
> attendance occurrences.
>
> Ashley is to call her supervisor and let him/her know one hour in
> advance of her start time when she will be unable to arrive for her
> scheduled start time.  Ashley should also know that while she has
> qualifying FMLA events she is still required and expected to
> follow all of Dollar General's policies and procedures, including,
> but not limited to, time and attendance.  For example, Ashley must
> make a reasonable effort to schedule planned medical treatments in
> advance.
>
> When notifying her manager of a qualifying FMLA event, Ashley
> will begin reporting her FMLA Claim Number for that particular
> event.

*Id.*, p. 53.

Matrix Absence Management, Inc. was Defendant's Third Party Leave Administrator.

Docket No. 51, p. 5.  Either Dollar General or Matrix would send Plaintiff a letter concerning

whether her requests for leave were approved.  Docket No. 84-1, p. 137-38.  On September 7,

2012, Matrix sent a letter to Plaintiff regarding leave #1138227.  As with other letters sent by

Matrix to Plaintiff, the letterhead on the first page of the letter states "DOLLAR GENERAL."

Docket No. 84-2, p. 124. That letter stated in part that Matrix had completed a review of

documentation submitted in support of Plaintiff's need for leave due to her own serious health

condition.

That letter also states in relevant part:

> *Your certification is valid through 03/28/2013.*
>
> . . .
>
> Since this is an intermittent leave, you are also required to report
> your absences to Matrix. The following methods are available for
> you to report intermittent time, via the iPhone or Android
> application, by creating/utilizing your on-line account at
> <u>www.matrixeservices.com</u> or by calling the automated voice
> response system and following the prompts. Instructions are
> attached. *For scheduled appointments, you must inform your
> supervisor in advance of your absence. If advance notice is not
> possible, notify your supervisor as soon as possible.*

Docket No. 84-2, p. 124-25 (italics added).

The end of the letter lists an address from Matrix and also includes the notation "Matrix

Absence Management, Inc. on behalf of Dollar General." Matrix sent Plaintiff another letter

regarding Claim No. 1138227 dated October 3, 2012. *Id.*, p. 129; 84-3, p. 1. That letter is

essentially identical to the September 7, 2012, letter in all relevant aspects. Matrix also sent

Plaintiff a virtually identical letter on December 6, 2012. Docket No. 84-3, p. 5-6.

On December 17, 2012, Plaintiff received a "Final Counseling." Plaintiff's Dep., Ex.16,

Docket No. 84-3, p. 55-57. That form notes nine "unexcused absences and tardiness" between

October 8, 2012 and December 10, 2012. *Id.* The "Final Counseling" also states:

> You have also failed to follow Dollar General's procedure for
> reporting absences and tardiness, including failure to notify your

Manager/Supervisor at least one hour prior to your scheduled reporting time. Those dates include November 29, 2012, December 3, 2012, December 10, 2012.

*Id.*, p. 56.

With regard to "follow-up meeting dates," the "Final Counseling" form further states:

None required; non-compliance to any company policy, procedure or this Final Policy/Conduct Violation will result in immediate termination.

*Id.*, p. 56.

As noted, Plaintiff has filed her own Affidavit. Plaintiff's Aff., Docket No. 37-15. Plaintiff's Affidavit does not necessarily address the foregoing issues of tardiness and alleged violations of the Attendance and Tardiness Policy. Plaintiff's Affidavit, however, provides the following facts. On December 22, 2012, Dr. Katy Hansen from the Vanderbilt Integrated Health Facility filled out a U.S. Department of Labor "Certification of Health Care Provider for Employee's Serious Health Condition" pursuant to the FMLA for Plaintiff.[5] Docket Nos. 37-15, p.1; 37-3. That form indicates that Plaintiff was referred to other health care provider(s) for evaluation and treatment. Docket No. 37-3, p. 2. It indicates that "other relevant medical facts ... related to the condition for which the employee seeks leave were 'fibromyalgia, allergies, headaches, recurrent infections, and skin lesions.'"[6] *Id.*

The form further states that Plaintiff would need "follow-up treatment appointments or work part-time or on a reduced schedule" because of her medical condition. Docket No. 37-3, p.

---

[5] The Certification identifies the health care provider as "Katy Hansen." It appears that Ms. Hansen is not a physician, but is a Nurse Practitioner.

[6] Nurse Hansen also lists an illegible condition that appears to be "IBS," possibly referring to irritable bowel syndrome. *See id.*

3. The estimated treatment scheduled was "TBD." *Id.* The estimated part-time or reduced work schedule Plaintiff needed was up to four hours per day, three days per week, from "now through TBD." *Id.* The form also stated that the condition would cause "episodic flare-ups periodically preventing the employee from performing his/her job functions." *Id.* The form further states that it "is medically necessary for the employee to be absent from work during flare-ups." *Id.* As stated above, Nurse Hansen signed the form on what appears to be December 22, 2012. *Id.*, p. 4.

Plaintiff states that after December 22, 2012, but before January 2, 2013, she called Matrix and reported "this new claim." Docket No. 37-15, p. 2. She states that Matrix issued paperwork and provided that she had fifteen days to provide medical documentation. *Id.* On January 2, 2013, Dollar General/Matrix sent a letter to Plaintiff stating in relevant part:

> On 01/02/2013 you informed Matrix absence management (Matrix) that you need a leave of absence for your own serious health condition. *Dollar General has been notified of your request.* **This letter is ONLY about your ELIGIBILITY based on federal and/or state employment requirements. APPROVAL of your leave is pending medical certification.**
>
> . . .
>
> You have requested this leave beginning on 01/01/2013 and expect it to continue through on or about 01/01/2013 [*sic*].
>
> . . .
>
> In order for Matrix to determine if your absence is approved you must ensure the Certification of Health Care Provider form included in your Absence Packet, is returned to Matrix. If you supplied Matrix with your Health Care Provider's contact information at the time you filed for your leave, as a courtesy, Matrix faxed your provider the form. It is your responsibility to ensure the form is completed and faxed or mailed to Matrix **within fifteen (15) days** from your filing date. Receipt of form is due on 01/17/2013.

Docket No. 37-4, p. 1-2 (boldface original, italics added).

Plaintiff's Affidavit further states that she asked for a meeting with Terri Curran Lane to discuss accommodation "to include the recommended reduced work schedule." Docket No. 37-15, p. 2. She states, "A meeting to discuss accommodation was scheduled for the morning of January 4, 2013." *Id.*

On December 31, 2012, at 4:47 p.m., Plaintiff emailed Jessica Mullen regarding an oral surgery she had scheduled for the afternoon of January 4, 2013, pursuant to FMLA claim #125818. *Id.* She states, "That was approved." *Id.* Plaintiff also states that as of January 4, she "was also approved FMLA protection for absences through Claim #1248633 through March 28, 2013 and Claim #1248633 through April 3, 2013 [*sic*]." *Id.*, p. 2. In fact, on November 20, 2012, Matrix/Dollar General sent Plaintiff a letter regarding Leave #1248633 that stated in part, "Your Certification is valid through 04/03/2013." Docket No. 37-18, p. 1.

Plaintiff's Affidavit states that on January 4, 2013, she had an "unexpected flare up" of her condition and was unable to work because of her serious medical condition. Docket No. 37-15, p. 2. She states that she woke up with blurry vision and was unable to see. *Id.*, p. 2-3. She was unable to report the flare-up one hour before her shift, because she did not know it was going to occur one hour before her shift. *Id.* She states that she did report the flare-up as soon as she "was physically able via phone call, and two emails." *Id.*

Plaintiff states that on January 4, 2013, at 10:37 a.m., she emailed Jessica Mullen that she was ill due to a condition covered by FMLA and provided her with the Matrix claim number. *Id.*, p. 3.

Plaintiff has provided an email that indicates it was sent from Plaintiff to Jessica Mullen at 10:37 a.m. on January 4, 2013.  Docket No. 37-8.  Plaintiff's email states:

> Subject: Re: FMLA Claim #1245818
>
> Jessye,
>
> I will no longer be having this surgery today.  Im put [*sic*] today for FMLA claim #1305962.  Thank you!

*Id.*

Ms. Mullen sent a copy of this email to Jarod Mullins at 10:39 a.m., and Ms. Mullen responded to Plaintiff at 2:42 p.m., stating in relevant part, "Thank you for letting me know."  *Id.*

Plaintiff further states that, at 5:40 p.m. on January 4, 2013, she sent an email to Jessica Mullen advising her that eight hours had been submitted to Matrix on January 4, 2013 for "flare-up."  *Id.*; Docket No. 37-9.

As discussed above, Defendant has submitted the Declaration of Terri Lane, Senior Manager of Corporate Human Resources for Defendant.  Docket No. 53, p. 1.  Ms. Lane states in relevant part, "I made the decision to terminate Ashley Linton because of Ms. Linton's failure to follow Dollar General's attendance and call in policy on January 4, 2013, her prior history of unapproved absences, and her disciplinary history."  *Id.*  Ms. Lane's Declaration states that on January 2, 2013, "[d]ue to nervousness over being late, . . . Ms. Linton did request an eight and one-half hour workday, so she could have two fifteen-minute breaks in the morning and two fifteen-minute breaks in the afternoon."  She made no mention of any "reduced work schedule," and she did not tie this request to any alleged disability or FMLA leave."  *Id.*, p. 3.  Thus, Ms. Lane scheduled a meeting for January 4, 2013, with Ms. Linton and her supervisor, Jessica

Mullen, at 8:30 a.m. to discuss Plaintiff's request to extend her workday to eight and one-half hours.  *Id.*, p. 4.  She states that Plaintiff accepted the meeting invitation on January 3, 2013, but that Plaintiff did not arrive for the meeting at 8:30 a.m. on January 4, 2013.  *Id.*  Ms. Lane's Declaration states in part, "[Plaintiff] also failed to contact either Ms. Mullen or myself to let us know she would be late or unable to attend."  Docket No. 53, p. 4.  Ms. Lane's Affidavit continues:

> 13.  Between 8:33 a.m. and 9:17 a.m. on January 4, 2013, I reached out to Ms. Linton six times by telephone and email in an effort to determine where she was and whether she would be reporting to work.  I did not hear from Ms. Linton until 9:58 a.m., when she responded to one of my emails sent to her personal email address. Ms. Linton called me at 10:42 a.m. to say she did not follow Dollar General's call in procedure either before or after the start of her shift because she "overslept."

> 14.  Ms. Linton did not provide a doctor's note for her specific absence the morning of January 4, 2013.  To my knowledge, Ms. Linton did not have a certified or approved FMLA leave for the morning of January 4, 2013.  Later, Ms. Linton claimed her absence was covered by FMLA leave #1035926, but Ms. Linton did not have an approved leave with that number for January 4, 2013.

> 15.  Because Ms. Linton did not provide any extenuating circumstances of the reason for her absence and failure to follow the call-in requirements of the Attendance and Tardiness policy as well as Ms. Linton's history of disciplinary actions and failure to follow policy, I made the decision to separate her employment.

> 16.  I informed Ms. Linton of my decision on January 7, 2013.  Ms. Linton did not provide any medical documentation to me at that point.  During our meeting, she insisted she did not have to follow the call in requirements of the Attendance and Tardiness Policy.

> 17.  I did not consider any of Ms. Linton's requests for FMLA leave, any of her approved FMLA absences, or any physical or mental condition when making my decision to terminate her for her

> failure to follow Dollar General's attendance and call in policy on
> January 4, 2013, her prior history of unapproved absences, and her
> disciplinary history.

*Id.*, p. 4-5.[7]

Ms. Lane states that she informed Plaintiff of her decision regarding the termination on

January 7, 2013. Docket No. 53. She states, "Ms. Linton did not provide any medical

documentation to me at that point." *Id.*, p. 5. She also states, "During our meeting, she insisted

she did not have to follow the call in requirements of the Attendance and Tardiness Policy." *Id.*

### III. Analysis

### A. Summary Judgment Standards

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." To prevail, the moving party must meet the burden of

proving the absence of a genuine issue as to material fact concerning an essential element of the

opposing party's claim. *See Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91

L.Ed. 2d 202 (1986); *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In

determining whether the moving party has met its burden, the court must view the evidence in

the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith*

*Radio Corp*., 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the non-moving party may not rest upon the mere

---

[7] In paragraph 14 of her Deposition, Ms. Lane states that Ms. Linton later claimed her
absence was covered by FMLA leave #1035926. The January 2, 2013 letter from Matrix/Dollar
General gave the claim # as 1035962.

allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a non-moving party, however, fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23; *Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999).

## B. Family Medical Leave Act ("FMLA")

The FMLA provides, in a section headed "Prohibited acts":

(a) Interference with rights.

(1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title.

(2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title.

29 U.S.C. § 2615.

As the Sixth Circuit has noted:

The FMLA is a comprehensive remedial scheme designed to protect employees from interference with their right to FMLA qualifying leave by their employers. . . . The FMLA must therefore "be construed broadly to extend coverage[,] and [the FMLA's] exclusions or exceptions should be construed narrowly."

*Festerman v. County of Wayne,* 2015 WL 2147026 (6th Cir.) at *8.

The Sixth Circuit has also stated:

This court recognizes two distinct theories for recovery under the FMLA: (1) the "entitlement" or "interference" theory arising from 29 U.S.C. § 2615(a)(1); and (2) the "retaliation" or "discrimination" theory arising from 29 U.S.C. § 2615(a)(2).

*Hoge v. Honda of Am. Mfg. Inc.,* 384 F.3d 238, 244 (6th Cir. 2004).

To succeed on a claim for FMLA interference, an employee must show:

(1)     [the employee] was an eligible employee;

(2)     the defendant was an employer as defined under the FMLA;

(3)     the employee was entitled to leave under the FMLA;

(4)     the employee gave the employer notice of her intention to take leave; and

(5)     the employer denied the employee FMLA benefits to which she was entitled.

*Donald v. Cybra, Inc.,* 667 F.3d 757, 761 (6th Cir. 2012).

In an FMLA interference case, interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct. *Edgar v. JAC Prods., Inc.* 443 F.3d 501, 508 (6th Cir. 2006).

It appears from Defendant's brief that Defendant agrees that Plaintiff has stated a prima facie case interference under the FMLA. Defendant states, "This is the issue in this case: whether Dollar General had a legitimate reason unrelated to Plaintiff's exercise of her FMLA rights for discharging her." Docket No. 47, p. 6. Defendant contends that it did. Defendant argues that Plaintiff was required to follow its "usual and customary" notification procedures. Defendant appears to argue that the "usual and customary" notification procedures required

Plaintiff to call in to report her absences at least one hour prior to her shift.

As discussed above, however, Defendant's Attendance and Tardiness Policy provided that if an employee could not report to work as scheduled, the employee was required notify his or her manager at least one hour prior to the scheduled reporting time or be prepared to provide evidence of extenuating circumstances.

Defendant's FMLA policy states that an employee must provide the company with thirty days advanced notice before FMLA leave is to begin, if the need for leave is foreseeable. The policy goes on to state, "if 30 days advance notice is not practical or possible (e.g., an emergency), the employee must give notice as soon as practicable." Finally, letters from Matrix/Dollar General to Plaintiff instructed Plaintiff that she was required to report her absences to Matrix. The letter specifically stated: "For scheduled appointments, you must inform your supervisor in advance of your absence. If advance notice is not possible, notify your supervisor as soon as possible."

Thus, there is genuine issue as to material fact concerning exactly what Defendant's Attendance and Tardiness Policy actually was. Defendant focuses on an argument that the Policy required an employee to call in at least one hour prior to the start of the shift they would miss. As discussed above, the Policy actually states that "the employee must notify his or her manager at least one hour prior to the scheduled reporting time or be prepared to provide evidence of extenuating circumstances." A reasonable juror could find that Ms. Linton provided evidence of extenuating circumstances.

In response to one of Plaintiff's Interrogatories, Defendant stated in part, "On the morning of January 4, 2013, Plaintiff once again failed to show up to work as scheduled and did

not call or email any supervisor to report her absence or tardiness." Docket No. 37-16, p. 2.

Plaintiff did, however, send an email to her supervisor Jessica Mullen, on the morning of January

4, 2013, although it was sent more than two hours after her scheduled start time.

In another Interrogatory response, Defendant stated:

> Plaintiff did not seek approval for her absence on the morning of
> January 4, 2013, under the Family and Medical Leave Act or
> Company policy, nor did she make any statements or comments to
> provide notice to Dollar General that her morning absence
> potentially could be FMLA-qualifying. Moreover, Plaintiff
> notified Dollar General's leave administrator, Matrix Absence
> Management, that she sought to be excused from work only during
> the afternoon of January 4, 2013, beginning at 12:00 p.m.

Docket No. 37-16, p. 4.

Plaintiff, on the other hand, states that she called Matrix and reported her new claim after

December 22, 2012, but before January 2, 2013.[8] Docket No. 37-15, p. 2. The January 2, 2103

letter, on letterhead of "Dollar General," states in part that on January 2, 2013, Plaintiff informed

Matrix that she needed a leave of absence for her own serious health condition, and that Dollar

General had been notified of her request. Docket No. 37-4,p. 1. That document also states that,

for scheduled appointments, the employee must inform her supervisor in advance of her absence

but that, "[i]f advance notice is not possible, notify your supervisor as soon as possible." *Id.*, p.

2.

A reasonable juror could conclude that Plaintiff notified Defendant on January 4, 2013,

"as soon as possible" or "as soon as practical." It is also possible that Plaintiff was prepared to

"provide evidence of extenuating circumstances," but she was simply never asked to do so.

---

[8] It is clear that Plaintiff's new claim was not the same claim that covered the afternoon
of January 4, 2013.

Defendant emphasizes the fact that Plaintiff stated that she "overslept." While Defendant casts that statement in a disparaging light, Plaintiff may have overslept because of one or more of the conditions for which she sought FMLA leave.

Defendant argues further that Plaintiff had no open or approved leave for the morning of January 4, 2013. Once again, however, there is a genuine issue as to material fact concerning this point. Plaintiff appears to have followed the appropriate procedures for reporting her need for FMLA leave by contacting Matrix on January 2, 2012. Matrix sent her a letter with a claim number for the FMLA leave she requested, specifically stating "Dollar General has been notified of your request." Matrix also advised Plaintiff that she had fifteen days to submit Medical Certification. That fifteen days would have expired on January 19, but Plaintiff was terminated on January 7.

Moreover, as discussed above, Matrix had sent Plaintiff letters dated September 7, 2012, October 3, 2012, and December 6, 2012, all regarding Leave #1138227, that stated in part, "Your Certification is valid through 03/28/2013." Docket No. 84-2, p. 124. Defendant never explains why Plaintiff was not covered under these prior Certifications, beyond stating simply that she did not report that to Defendant.

Defendant further argues that the December 12, 2012 Medical Certification was never approved and was "insufficient." As discussed above, however, the January 2, 2013, letter from Dollar General/Matrix to Plaintiff plainly stated that Plaintiff's certification form was due January 17, 2013. Had Plaintiff not been terminated, she could have submitted further information and a new form.

Defendant finally proffers a "legitimate reason" for terminating Plaintiff, namely "her failure to follow Dollar General's attendance and call in policy on January 4, 2013, her prior history of unapproved absences, and her disciplinary history."

Plaintiff's handwritten notes concerning conversations with her supervisor, Jarod Mullins could reasonably be interpreted as identifying Plaintiff's FMLA-related absences as one of the reasons for her termination. *See Wallner v. J.J.B. Hilliard,* 590 Fed. Appx. 546, 554 (6th Cir. 2014). Mr. Mullin's statements that Plaintiff would "have to come to work" if she wanted to "move up in this company," and his statement that he had never seen anyone "who is not at work as much as [Plaintiff]," can be viewed as showing clear hostility to Plaintiff's taking FMLA leave.

Moreover, the "documented verbal counseling" Plaintiff received on September 12, 2011, stated that she had a total of 77 attendance occurrences since April 11, 2001. It does not appear that Defendant was overly concerned at that point, because it apparently did not warn Plaintiff after her tenth, fifteenth, twentieth, or even sixtieth "attendance occurrence."[9] Defendant did not terminate Plaintiff, however, until five days after she had been told by Matrix that she was eligible for FMLA benefits and that approval of her leave was pending medical certification. *See Wallner* at 556. Temporal proximity between the Plaintiff's exercise of protected rights and an adverse action is relevant to whether the former is causally connected to the later. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

There is a genuine issue as to material fact concerning whether Defendant's proffered

---

[9] It appears from the record that Plaintiff's main problem was excessive tardiness, not excessive absenteeism. As Plaintiff testified in her deposition, an employee was considered tardy if she clocked in one minute past her start time. Docket No. 84-1, p. 155-56.

reason for the termination of Plaintiff was unrelated to the exercise of her FMLA rights.

To establish a prima facie case for retaliation under the FMLA, an employee must show:

> (1)    [the employee] was engaged in an activity protected by the FMLA;
>
> (2)    the employer knew that she was exercising her rights under the FMLA;
>
> (3)    after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and
>
> (4)    there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald*, 667 F.3d at 761.

The Sixth Circuit applies the *McDonnell Douglas* burden-shifting framework to retaliation claims that turn on circumstantial evidence. *Daugherty v. Sajar Plastics, Inc.,* 544 F.3d 696, 707 (6th Cir. 2008). If a plaintiff makes a prima facie showing of retaliation, the burden shifts to the defendant to establish a legitimate, non-discriminatory reason for its decision. The burden imposed on a Plaintiff to establish a prima facie case, however, "is not intended to be an onerous one." *Bryson v. Regis Corp.,* 498 F.3d 561, 571 (6th Cir. 2007) (internal quotation marks and citations omitted). If the defendant satisfies its burden in establishing a legitimate, non-discriminatory reason for its decision, the plaintiff's retaliation claim will overcome a summary judgment challenge only if the plaintiff can show that there is a genuine issue of material fact as to whether defendant's "stated reasons are a pretext for unlawful discrimination." *Donald*, 667 F.3d at 761-62.

Plaintiff may establish pretext by showing that the employer's proffered reasons (1) have

no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action. *Seeger v. Cincinnati Bell Telephone Co., LLC,* 681 F.3d 274, 285 (6th Cir. 2012)

Defendant argues that Plaintiff has shown no causal connection between the protected FMLA activity and the adverse employment action. Defendant argues, "Plaintiff must show the exercise of her FMLA rights was a 'motivating factor' in her discharge." Docket No. 47, p. 17. Plaintiff contends, however, that Ms. Lane stated in her Declaration that Plaintiff's FMLA leave played a part in her decision to terminate Plaintiff's employment. Once again, there is a genuine issue as to material fact concerning this point. As discussed above, on January 2, 2013, Matrix/ Dollar General sent Plaintiff a letter that stated in part: "On 01/02/2013 you informed Matrix Absence Management (Matrix) that you need a leave of absence for your own serious health condition. *Dollar General has been notified of your request*." Docket No. 37-4, p. 1 (emphasis added). Thus, it appears that Defendant may have known five days before Plaintiff was terminated that she had requested FMLA leave.

Moreover, Ms. Lane's Declaration establishes that one of the considerations for Plaintiff's discharge was her failure to follow Defendant's attendance and call in policy on January 4, 2013. The FMLA prohibits an employer from using an employee's exercise of FMLA rights as "a negative factor" against the employee when making an employment decision. *Hunter v. Valley View Local Schools*, 579 F.3d 688, 692 (6th Cir. 2009). The Court is satisfied that Plaintiff has presented evidence to establish that her exercise of her FMLA rights played a motivating part in the decision to terminate her.

The question becomes whether Defendant has shown by a preponderance of the evidence that it would have made the same decision even if it had not taken Plaintiff's exercise of her

FMLA rights into account.  For the reasons discussed above, Defendant has not shown this by a preponderance of the evidence.

## C. ADA/TDA Claims

In order to establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that:

> 1) she is disabled;
> 2) she is otherwise qualified for the position, with or without reasonable accommodation;
> 3) she suffered adverse employment decision;
> 4) her employer knew or had reason to know of the plaintiff's disability; and
> 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Whitfield v. Tennessee,* 639 F.3d 253, 259 (6th Cir. 2011) (citations omitted).

Defendant does not dispute that Plaintiff can show she is disabled.  Docket No. 51, p. 13, n.7.

Defendant argues that Plaintiff cannot prove she was "otherwise qualified" to perform the essential functions of her job, with or without reasonable accommodation.  Defendant also claims that Plaintiff did not exhaust her failure to accommodate claim.  It appears that Defendant is correct with regard to this latter claim.  Plaintiff's "charge of discrimination" raises only a termination issue, not an accommodation issue.

Even so, however, there is a genuine issue as to whether Plaintiff could perform her job duties without an accommodation.  *See* Docket No. 84-3, p. 69-71.  Defendant apparently takes the position that Plaintiff's excessive absenteeism shows that she was not qualified for the position.  While Defendant argues that its "attendance policy made it clear that attendance was

essential to Plaintiff's job duties," nothing in the "Attendance and Tardiness policy" so states. Docket No. 51, p. 16; Docket No. 53-1, p. 1. That policy merely states, "Excessive absenteeism and tardiness have a negative effect on our productivity and quality of service. For this reason, Dollar General expects its employees to be present for work when scheduled and to call their manager if for any reason they cannot be at work at the scheduled time."

Defendant next argues that Plaintiff cannot establish pretext. The Court rejects this argument for the reasons discussed in the FMLA section above.

Plaintiff has shown the remaining elements of a prima facie case. For the reasons discussed above, Plaintiff has also shown that Defendant's reason for terminating her could have been pretextual.

With regard to the TDA, a plaintiff must show: (1) he was qualified for the position; (2) he was disabled; and (3) he suffered an adverse employment action because of that disability. *Bennett v. Nissan N. Am., Inc.,* 315 S.W. 3d 832, 841 (Tenn. Ct. App. 2009).

Defendant does not specifically address the TDA claims beyond stating the elements of a prima facie case. Docket No. 51, p. 13, n.6. Thus, Defendant has not shown that it is entitled to summary judgment with regard to the TDA.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment (Docket No. 36) and Defendant's Motion for Summary Judgment (Docket No. 50) should be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have

fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


E. Clifton Knowles
United States Magistrate Judge